#24233-r-SLZ
**2007 SD 92**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

SUSAN PEARSON,                                    Plaintiff,

    v.

LINDA O'NEAL-LETCHER,

                                  Defendant,

    and

JOHN J. PAUL and DELL RAPIDS
LUMBER CO.                                    Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE GENE PAUL KEAN
Judge

\* \* \* \*

WILLIAM FULLER of
Fuller & Sabers, LLP                         Attorneys for appellant
Sioux Falls, South Dakota                    Renee Christensen.

MICHAEL L. LUCE
ERIC C. SCHULTE of
Davenport, Evans, Hurwitz
 & Smith                                   Attorneys for appellees
Sioux Falls, South Dakota                    John J. Paul and Dell Rapids Lumber.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 19, 2007

OPINION FILED **08/29/07**

#24233

ZINTER, Justice

[¶1.]        Renee Christensen, attorney for plaintiff Susan Pearson, appeals the circuit court's imposition of discovery sanctions against her in two consolidated personal injury cases. The circuit court imposed the sanctions because Christensen had solicited an opinion from plaintiff's physician regarding the permanency of plaintiff's injuries, yet Christensen failed to disclose the physician's opinion in the defendants' first discovery request. Rather, Christensen only disclosed the opinion when she later identified the physician as a trial witness. Because we conclude that defendants' initial request was not specific enough to require disclosure, we reverse.

**Facts and Procedural History**

[¶2.]        Susan Pearson was involved in two separate car accidents that resulted in alleged soft tissue and whiplash injuries. Because there were common questions of fact, the cases were consolidated for trial. Christensen represented Pearson in her claims against both drivers and one of the driver's employers. Defendants John J. Paul and Dell Rapids Lumber Co. (Paul) served interrogatories and requests for production that required the disclosure of Pearson's "medical records" for ten years preceding the accidents. Although most of the records were initially disclosed, Paul continued to correspond with Christensen because it appeared from the records provided that other treatment records existed. Ultimately, in October 2005, in response to a defense letter indicating that at least one record from Sioux Valley Clinic was still missing, Christensen replied, "we forwarded to you the records that we have in our possession that we have received from that facility, and I am not aware of any other records."

-1-

[¶3.]    In December of 2005, counsel entered into a stipulated scheduling order for trial. Dr. Allen Unruh was subsequently designated as plaintiff's trial expert. He had opined that some of plaintiff's injuries were permanent. The discovery of his records and opinions are not at issue.

[¶4.]    The medical records of Dr. Mark Rector, the plaintiff's physician, are at issue. Although Dr. Rector was not initially identified as a trial witness, Christensen identified him in the spring of 2006 as a trial witness that she wanted to depose. Christensen indicated that Dr. Rector would provide the necessary foundation for the plaintiff's medical bills. Because Dr. Rector was then identified as a trial witness, Christensen also produced a previously undisclosed July 5, 2005 letter she had received in response to a June 29, 2005 inquiry she had made of Dr. Rector concerning the permanency of the plaintiff's injuries. In his July 5, 2005 letter, Dr. Rector contradicted Dr. Unruh. Specifically, Dr. Rector reviewed the medical records from the time of his initial medical treatment and opined that plaintiff's injuries were not permanent.

[¶5.]    Upon learning of Dr. Rector's opinion, Paul canceled a previously scheduled independent medical examination, and the case was settled. Sanctions for the failure to disclose Dr. Rector's July 5, 2005 opinion letter then became the issue that is the subject of this appeal.

[¶6.]    Dr. Rector had been Pearson's family physician at Sioux Valley Clinic. Although he had not treated her for the acute aspects of the accidents, he had seen her in his office for treatments stemming from the first accident only two days before the second accident.

[¶7.]      On June 29, 2005, after the litigation was commenced but prior to Christensen's response to discovery requests, she wrote to Dr. Rector asking for updated medical records. Based upon the treatment he had provided, she also solicited his opinion about the permanency of Pearson's injuries and prognosis. She wrote:

> Our office represents Susan Pearson in regard to the above referenced matter which pertains to two different motor vehicle accidents. I do have a copy of your medical records but would also offer an additional authorization to disclose health information signed by Susan Pearson so that I can obtain any updates in those records from 2-5-2004 to the present. I would also appreciate receiving copies of those additional medical bills.
>
> I do have a few questions in regard to the treatment that you have provided to Susan. They are as follows:
>
> 1. What injury did Susan sustain from the motor vehicle accidents which occurred on September 7, 2002 and June 19, 2003?
>
> 2. Was the medical care and treatment that you provided and recommended necessary to treat the injuries that Susan sustained as a result of the motor vehicle accidents?
>
> 3. Do you think that Susan should have any additional medical treatment, therapy or care as a result of the motor vehicle accidents and the injuries that she sustained and if so, would you identify what you would recommend including medications at this time?
>
> 4. Do you think that these injuries Susan sustained from the motor vehicle accidents are permanent and would you tell me briefly what you feel her prognosis is in this regard?
>
> Thank you for your time and consideration in this matter. If there is a cost in assisting our office via this letter, would you please send us your bill and I will make sure it is paid forthwith. Thank you.

In his reply, Dr. Rector opined, among other things, that Pearson's injuries were not permanent. He stated:

> I received your correspondence regarding Susan Pearson on July 5, 2005. I did review the medical records to which we both have access. We are happy to update any medical records that are more recent than February of 2005.[1] In regards to your four questions, on review of the medical records, I find that I did not treat Susan acutely for either her September 7, 2002 or June 19, 2003 accidents. Interestingly, she saw me two days prior to the second motor vehicle accident and we discussed ongoing pain from the first incident. She has also been under the care of physical therapy, which I have recommended for ongoing continued stretching and strengthening exercises. She will likely need intermittent anti-inflammatories and muscle relaxers. With my initial treatment plan, I was hoping to alleviate some of her discomfort and allow her to have a better quality of life.
>
> Finally, I do not feel that the injuries are permanent and she should be able to continue with meaningful activities . . . .

[¶8.]     Christensen admits that when responding to Paul's interrogatories and request for production of "medical records," she did not disclose this letter from Dr. Rector. Christensen later explained that she failed to disclose the letter in the earlier discovery because she considered Dr. Rector a consulting expert employed in anticipation of litigation whose opinion was protected from routine disclosure by SDCL 15-6-26(b)(4)(B).[2] She did, however, disclose the letter when she identified him as a trial witness.

---

1.     The dates of the last received medical records are inconsistent between Pearson's letter and Dr. Rector's response. However, the dates are not pertinent to the resolution of this case.

2.     SDCL 15-6-26(b)(4)(B) provides:

(continued . . .)

[¶9.]     The circuit court concluded that 1) Dr. Rector was a fact or "actor" witness, not a consulting expert; 2) Christensen impermissibly withheld the letter without a protective order; and 3) Christensen's response that she had forwarded all records was untrue.  Therefore, the court imposed sanctions under SDCL 15-6-37(d).  Paul indicated that had he known Dr. Rector's opinion that Pearson's injuries were not permanent, the independent medical examination would not have been scheduled.  The court imposed sanctions of $973.84 (representing one half the cost in each case of the preparatory and cancellation expenses of the independent medical examination) plus $551.20 in attorney's fees incurred in pursuing the motion for sanctions.  There is no dispute that if Paul was entitled to attorney's fees for pursuing a sanction motion, the fee request was reasonable.

[¶10.]    The question on appeal is whether Christensen violated SDCL §15-6-37(d) by withholding Dr. Rector's opinion letter from the initial discovery.  A circuit court discovery sanction under SDCL 15-6-37 is reviewed under an abuse of discretion standard.  Chittenden & Eastman Co. v. Smith, 286 NW2d 314, 316 (SD 1979).

> We have held that an abuse of discretion refers to a discretion
> exercised to an end or purpose not justified by, and clearly
> against, reason and evidence.  SDCL 15-6-37 gives the trial

_____

(. . . continued)

> A party may discover facts known or opinions held by an expert who
> has been retained or specially employed by another party in
> anticipation of litigation or preparation for trial and who is not
> expected to be called as a witness at trial, only as provided in §15-6-
> 35(b) or upon a showing of exceptional circumstances under which it is
> impracticable for the party seeking discovery to obtain facts or
> opinions on the same subject by other means.

> judge broad latitude in penalizing the party who has failed to comply with discovery orders, however such latitude is not limitless.

Haberer v. Radio Shack, a Div. of Tandy Corp., 1996 SD 130, ¶16, 555 NW2d 606, 610 (quoting Schrader v. Tjarks, 522 NW2d 205, 209 (SD 1994)).  Obviously, there must be underlying factual support to find that a discovery violation occurred.

**Decision**

[¶11.]    Christensen argues that the circuit court erred because: 1)  Dr. Rector was both a treating physician and a consulting expert whose testimony was not routinely discoverable under SDCL 15-6-26(b)(4)(B); 2) the letter was timely disclosed when Dr. Rector was identified as a trial witness; 3) the language of the discovery request did not require disclosure of the letter; and 4) the sanctions awarded were not authorized by SDCL 15-6-37(d).  We view the dispositive question as whether the language of the discovery requests required disclosure of the letter.  Therefore, we only address Christensen's third argument.

[¶12.]    Christensen first points out that Paul's interrogatories and request for production of documents (hereafter referred to as interrogatories) asked for Pearson's "medical records" rather than "documents."  She further points out that although "medical records" were requested, that term was not defined, and that while the interrogatories' definition of "document" would have included the letter, the term "document" was not used in those requests.[3]  The circuit court, however,

---

3.    Paul's interrogatories utilized the following definition of "document":

> "Document" includes any written, recorded, graphic matter, however produced or reproduced, including, but not limited to, correspondence,
>
> (continued . . .)

found that "[r]ecords or documents included correspondence," and that the interrogatories "requested production of these documents," thus requiring production of correspondence. Our reading of the interrogatories does not support the circuit court's findings.

[¶13.] A review of the interrogatories reflects that, although the word "documents" was defined in the interrogatories to include correspondence, the relevant interrogatories did not ask for "documents." Instead, the interrogatories asked for "a complete copy of your *medical*, chiropractic and therapy *records* relating to your visits to medical providers or chiropractors since the time of this accident"; "a copy of those *records*" from "all medical providers, doctors, chiropractors or therapists who have treated you in the past ten (10) years"; and "copies of all *medical records* for *treatment* received as a result of the alleged occurrence." (Emphasis added.)

[¶14.] SDCL 15-6-26(a) provides for several different methods of discovery,[4] and SDCL 15-6-37(d) authorizes sanctions for failure to respond.[5] Inherent in the

_____

(. . . continued)

> telegrams, or other written communications, printed material, photographs, drawings, contracts, agreements, notes, memoranda, work papers, diaries, minutes of meetings or any other writings.

4.    SDCL 15-6-26(a) provides:

> Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property, for inspection and other purposes; physical and mental examinations; and requests for admission. Unless the court orders otherwise under §15-6-26(c), the frequency of use of these methods is not limited.

(continued . . .)

statutes, however, is the requirement that a party must request the document at issue before the opposing party is required to comply.[6]  In this case, Paul defined the term "document," which included correspondence, but chose to phrase the relevant interrogatories using the different, undefined term "medical records."  To determine whether Christensen's initial failure to produce the correspondence failed

_____

(. . . continued)

5.  SDCL 15-6-37(d) provides:

> If a party or an officer, director, or managing agent of a party or a person designated under subdivision 15-6-30(b)(6) or §15-6-31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under §15-6-33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under §15-6-34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subdivisions 15-6-37(b)(2)(A), (2)(B), and (2)(C).  In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
>
> The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by §15-6-26(c).

6.  On appeal, the defense contends that Christensen should have objected to any interrogatories that were "vague and unclear."  They contend that since Christensen failed to object, any objections are now waived.  *See* SDCL 15-6-33(a), SDCL 15-6-34(b) (requiring answers to interrogatories and requests for production unless such interrogatories or requests are objected to).  However, Christensen is not contending that the interrogatories were vague or unclear.  In fact, she correctly points out that the interrogatories were very specific and defined.  Therefore, Christensen had no obligation to object to the

(continued . . .)

to comply with this request, we must consider the context in which Pearson's medical/clinical records and Dr. Rector's correspondence were created.

[¶15.]     Pearson's medical care was provided by Dr. Rector at the clinic, and her medical records were created simultaneously with her visits and treatment. Yet Dr. Rector's letter was not created in connection with any visit or treatment. Rather, it was created *after* the relevant treatment, at Paul's request in preparation for trial. Dr. Rector's opinion was formulated on his *previously* generated medical records and treatment. Considering the nature and timing of both Pearson's clinic records and Dr. Rector's letter, and considering the interrogatories' request for medical "records" instead of "documents," we find that the interrogatories did not require the production of the post-treatment opinion letter, which was not based on any contemporaneous medical visit or treatment.

[¶16.]     This is not to suggest that we condone an attorney's utilization of one expert opinion concluding that an injured party's injuries are permanent while simultaneously withholding the injured party's own physician's opinion that the injuries were not permanent. In this case, however, the question is narrow, and the relevant interrogatories did not require production of Dr. Rector's post-treatment opinion letter. Therefore, we reverse and need not address the parties' other arguments.

---

(. . . continued)
     interrogatories under SDCL 15-6-33(a) or SDCL 15-6-34(b) if they simply failed to ask for the type of document at issue.

#24233

[¶17.]    GILBERTSON, Chief Justice, and KONENKAMP, and

MEIERHENRY, Justices, and MILLER, Retired Justice, concur.

[¶18.]    MILLER, Retired Justice, sitting for SABERS, Justice, disqualified.